FILED - USDC - FLMD - OCA
OCT 2 2026 PM1:37

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

STEPHEN SACCOCCIA,

Plaintiff,

v.

5:26-cv-690 JEP PRL

UNITED STATES OF AMERICA,
FEDERAL BUREAU OF PRISONS,
UNITED STATES DEPARTMENT
OF JUSTICE,

**JURY TRIAL DEMANDED**

Defendants.
_______________________________________/

## COMPLAINT

AND NOW COMES Plaintiff Stephen Saccoccia who files this, his Complaint against the United States of America and the Federal Bureau of Prisons, United States Department of Justice, and states:

### narrative

1. As stated so simply by Benjamin L Torrez, DO, MPH, FAAOS in his article, *When Is It Time to Consider Carpal Tunnel Surgery?*

> Carpal tunnel syndrome occurs when the median nerve is compressed in the wrist, causing numbness, tingling, and weakness. Conservative treatments like splinting, anti-inflammatory medications, and activity modification are usually tried *first*. Surgery becomes the right option when symptoms persist, worsen, or interfere with daily life despite non-surgical care. ***Delaying surgery for severe cases can lead to permanent nerve damage and lasting weakness***.[1]

---

[1] https://www.torrezorthopedics.com/blog/when-is-it-time-to-consider-carpal-tunnel-surgery

2. This lawsuit relates to the Federal Bureau of Prisons' medical staff, for nearly eight years, negligently slow-walking treatment for Plaintiff's progressively worsening severe carpal tunnel syndrome in both hands, which caused Plaintiff to lose most use of the right hand while the left hand's nerves continue to deteriorate.

3. When the Bureau of Prisons finally took Plaintiff for surgery in 2024 for the right hand, they failed to provide any form of follow-up. Instead, they continually order tests, but do not act on them. When requests or recommendations are made by qualified medical staff for surgery consultation and surgery, they are internally denied, delayed, or have their deadlines passed. The additional testing and consultations show the same thing– that the situation is worsening and the nerves are being permanently damaged.

4. Despite the Plaintiff's ability to use either of his hands being reduced to practically nothing, the Defendants' agents apply prophylactic measures that might have been appropriate eight years ago, but now provide little benefit.

5. The situation created a permanent disability to Plaintiff, so he now must sue under the Federal Tort Claims Act, for mandamus, and pursuant to the Administrative Procedures Act.

## jurisdiction

6. This Court maintains jurisdiction pursuant to 5 U.S.C.§§701, *et seq.*, and 28 U.S.C. §§ 1346(b), 1361, and 2671-2680.

## parties

7. The Plaintiff is Stephen Saccoccia ("Saccoccia" or "Plaintiff"). Plaintiff is an inmate confined in the custody of the Federal Bureau of Prisons. At all times material, he has been housed in the Coleman Federal Correctional Complex.

8. The first Defendant is the United States of America, sued for the negligence and/or medical malpractice of various federal health care workers, employees, and contractors, known and unknown. The United States is sued pursuant to the Federal Tort Claims Act for the negligent acts and medical malpractice of its health services providers.

9. The second Defendant is the Federal Bureau of Prisons, which is a component of the United States Department of Justice. It is a federal agency. It is sued for mandamus pursuant to 28 USC 1361 and under the Administrative Procedures Act.

## Administrative remedies

10. Plaintiff lodged an administrative tort claim alleging negligence and medical malpractice on TRT-SER-2025-00801, which was ultimately denied. Plaintiff requested reconsideration of the denial of TRT-SER-2026-00801 and amended it to include subsequent events and the failure to provide treatment. By letter mailed on March 9, 2026 at 1:46 p.m. via certified mail, the United States converted the reconsideration and amendment to tort claim number TRT-SER-2026-00016 and denied the same.

11. In addition, Plaintiff exhausted Federal Bureau of Prisons administrative remedies relating to the delayed medical treatment and the damage as a proximate result by filing a so-called "BP-9" with the Warden, appealing it to the Regional Director, and lodging a final appeal to the Federal Bureau of Prisons Central Office. Plaintiff filed his final administrative remedy on August 7, 2025, the Administrative Remedy case number assigned by the defendants was 1233063. This agency denial occurred in late 2025 and is final. 5 U.S.C. §§ 551(13); 701(b)(2); 704. Plaintiff has no further administrative remedies to exhaust.

**background**

12. From 2018 through 2020, Plaintiff continually advised the Health Services department of the Federal Bureau of Prisons of problems and pain and swelling in his hands, but no action was taken.

13. During 2020 and 2021, the pain in both hands progressively worsened.

14. Multiple visits to the institution's medical clinic occurred in addition to written requests for treatment during 2020, 2021, and 2022.

15. On August 1, 2022, Dr. Richard Li made an initial diagnosis of carpal tunnel and prescribed wrist braces along with 5% lidocaine ointment and meloxicam for pain.

16. After continuing complaints and multiple years since the first complaints, Dr. Li finally chose to order testing.

17. On February 28, 2023, an EMG test performed by Galina Bogorodskaya, M.D., found evidence of *severe* bilateral carpal tunnel syndrome.

18. After nearly a month, on March 22, 2023, Dr. Li requested hand surgery consultation with a target date of April 14, 2023.

19. Over two and a half months later on June 29, 2023, hand surgeon Clayton Hann, M.D., of the SIMEDHealth Hand Surgery, 929 US-441, Ste 401, Lady Lake, Fl 32159, concurred with the neurologist, declared the right hand extremely bad, and advised that surgery should occur within 30 to 60 days to avoid damage and complications.

20. Health Services staff ignored these recommendations of their own consultant with respect to the urgent need.

21. On January 3, 2024, Plaintiff appeared at sick call for extreme pain. Donald Jamieson ARNP discovered that no request for surgery was ever forwarded to the regional director for approval. ARNP Jamieson submitted the request for expedited surgery based on Dr. Hann and Dr. Bogorodskaya, and he prescribed prednisone.

22. The target date was April 3, 2024, notwithstanding that the surgery should have already occurred.

23. Over one year after the defendants' agents knew of the urgent need for surgery, they finally arranged for it on August 1, 2024, and it was completed on the right hand only.

24. After surgery, Dr. Hann prescribed Hydrocodone/APAP tablets 5/325 mg. 4 times per day for 3 days.

25. Dr. Li ignored the need for pain relief and, without consultation of the surgeon, changed the prescription to mere Ibuprofen.

26. From August 1, 2024, to August 15, 2024, Plaintiff was in extreme pain but medical staff refused to see him or take any action.

27. The pain was excruciating, a level 10 of 10.

28. On August 15, 2024, Plaintiff saw Dr. Hann and told him that Dr. Li unilaterally changed the medication to Ibuprofen.

29. Dr. Hann provided Plaintiff a shot for pain.

30. Plaintiff advised Dr. Hann that he was concerned about the next surgery because he could not go through the excruciating pain of not being provided aftercare or any form of post-surgical pain relief other than over the counter medication meant for minor aches. Dr. Hann convinced Plaintiff that the other surgery needed to occur as soon as possible.

31. The Health Services Department set a target date of November 15, 2024, for the next surgery.

32. In the interim, the pain in the hand that was operated on grew significantly worse and Plaintiff suffered swelling and other complications, possibly an infection.

33. Plaintiff sought treatment verbally and in writing repeatedly from August 15, 2024, to October 28, 2024.

34. The Plaintiff filed a request for an informal resolution which was ignored.

35. On October 28, 2024, Plaintiff saw ARNP Jamieson.

36. Plaintiff requested that he see the surgeon forthwith in November 2024.

37. ARNP Jamieson advised that the hand looked extremely bad, was retaining fluid, and he opined Plaintiff may need additional surgery to correct the situation.

38. ARNP Jamieson prescribed Gagapitine 100mg (a low dose) to see how Plaintiff reacted.

39. However, Jamieson's request was denied.

40. In the first week of December 2024, Unit Manager Moore witnessed the extreme condition of the hand and contacted Health Services and directed they address the right hand being clearly swollen and untreated.

41. On December 2, 2024, Jose Ruiz-Quinones, MD, saw Plaintiff and recommended "hand surgery evaluation."

42. Health Services prescribed some methylprednisolone for the pain.

43. Plaintiff continuously appeared for "sick call" reporting pain and suffering and the need for follow up and additional surgery.

44. As of April 2025, the Bureau of Prisons still did not perform the necessary follow up despite repeated requests, appearances at sick call, and inmate requests to staff member form being submitted.

45. On April 17, 2025, Plaintiff enlisted Jonathan Platt, Esq., as his agent, who notified the Health Services Department that Plaintiff lost most of the use of his right hand as a result of the ultimately treatment and that the left hand deteriorated to the point that it was more problematic than the right hand.

46. Attorney Platt notified the Federal Bureau of Prisons that Plaintiff experiences constant extreme pain in both hands and that this has created a severe disability and hardship.

47. Attorney Platt requested that the Federal Bureau of Prisons expedite Plaintiff's evaluation and follow up to limit and correct the damage in both of his hands.

48. Attorney Platt notified the Bureau of Prisons that further delay may result in permanent and irreversible damage.

49. Plaintiff continued to frequently attend "sick call" and made requests to the Federal Bureau of Prisons for treatment.

50. On May 27, 2025, Attorney Platt notified the Bureau of Prisons that Plaintiff's condition has worsened and he is now experiencing severe, debilitating pain.

51. Attorney Platt advised the Bureau of Prisons that Plaintiff was compelled to spend a significant portion of each day with his hands submerged in ice and that he had to resort to placing Lidocaine patches directly on the affected areas.

52. Attorney Platt strongly urged the Federal Bureau of Prisons to immediately comply with the treatment recommendations of their own medical consultants to ensure that Plaintiff receives all necessary follow-up care without further delay.

53. During the end of May 2025, the Bureau of prisons had Plaintiff evaluated by Jongmin Kim, M.D.

54. Dr. Kim conducted an extensive examination of both of Plaintiff's hands including x-rays.

55. Dr. Kim ordered expedited neurological testing.

56. Dr. Kim expressed concerns to Plaintiff that the delay in post-surgical care since the August 1, 2024, operation exacerbated the damage and that surgery appeared required to save the use of the hands.

57. Dr. Kim also expressed to the Plaintiff that evidence exists of muscle damage caused by the delayed treatment.

58. On an unknown date, Dr. Li made a request for hand surgery for Plaintiff with a target date of December 19, 2025 and a scheduled target date of April 17, 2025, for "hand surgery, offsite eval. Please follow-up AIC with history of right-hand carpal tunnel surgery in Aug 2024, **currently with worsening right hand** 1st, 2nd, and 3rh finer paresthesia."

59. On June 6, 2025, Attorney Platt contacted the Bureau of Prisons again asking for the recommended treatment to be followed up on, that surgery be scheduled, and that the neurological testing occur as ordered.

60. In addition, Attorney Platt advised that Plaintiff made requests for his medical records and that they should be provided.

61. On September 28, 2025, RN Diamerys Navarro met with the Plaintiff. At 14:47 she noted that she was follow-up with *well path*[2] on the status of

[2] Based on information, "well path" refers to Wellpath Care, a Tennessee company that contracts with the defendants. "Wellpath works with partners to coordinate healthcare delivery through joint monitoring, planning, and problem resolution. We communicate on contract matters, including our services and operations, day-to-day activities, program needs, and future planning. We also provide resources for discharge planning and continuity of care. Here are a few examples of our administrative services: Medical

pending schedule hand surgery consult. *Well path* reports consult has been scheduled.

62. However, at 15:52 on the same date, she noted that she was following up with "*well path* on the status of pending schedule hand surgery consult. *Well path* reports consult has been completed on 5/23/2025. Orthopedic consult order with a target date of 9/25/2025 was **disapproved** due to ordered as surgery consult and it should be for EMG with follow-up with Dr. Kim at UF Gainsville for carpal tunnel syndrome after EMG." She noted an orthopedist consult with a target date of November 18, 2025, and set the priority to "routine." She stated that the reason for an "EMG Study Order" was due to "bilateral carpal tunnel syndrome and CMCJ arthritis with subluxation. Study recommended to evaluate nerve compression."

63. On October 8, 2025, ARNP Venetia Etkins evaluated Plaintiff and noted his bilateral carpal tunnel syndrome. She noted that an EMG was "pending." She noted that Plaintiff advised the pain in his hands was getting worse, making it difficult to grasp things, button his shirt, and perform other private hygiene activities. She noted a pain assessment of "7" with shooting pain and her "intervention" was the recommended EMG.

---

billing and coding, Insurance verification and pre-authorization, Appointment scheduling and reminders, Patient intake and registration, Medical transcription, Revenue cycle management, Discharge planning and continuity of care."

64. Starting in November 2024, Plaintiff attempted to gain medical treatment through the administrative remedy procedure, including Case 1238063, but the Bureau of Prisons denied any form of relief and has not expedited treatment. Instead, they claim they are providing treatment.

65. On November 17, 2025, the Federal Bureau of Prisons provided Plaintiff with a video consultation with Leslie Carroll, FNP-C, of Neura Health On-Demand Neurology, P.A. Nurse Practitioner Carroll noted, “Stephen’s symptoms are most consistent with carpal tunnel bilaterally, r/ hand has had surgery now w/ worsening numbness.” She recommended that they conduct an “EMG/NCS ASAP” and that Plaintiff “see hand surgeon.”

66. On January 20, 2026, the Bureau of Prisons transported Plaintiff to the SHANDS at the University of Florida where he was seen by Matthew Lamagna, D.O. Dr. Lamaga diagnosed Plaintiff with bilateral carpal tunnel syndrome. This was the EMG test that the defendants purportedly needed to proceed with surgery.

67. In July 2026, Attorney Platt again sent a letter to the Federal Bureau of Prisons seeking action for Plaintiff's medical conditions.

68. Plaintiff has repeatedly and consistently attended the Health Services Department, or advised at medical rounds during the repeated lockdowns at the Coleman Correctional Complex, to report worsening conditions.

69. However, as of September 1, 2026, allowing nearly nine months to pass from the EMG test, Plaintiff still has not received the necessary treatment or surgery to reduce or stop the nerve damage from carpal tunnel.

70. The actions of the agents of the Federal Bureau of Prisons, United States Department of Justice, constitute a deliberate indifference to the serious medical needs of the Plaintiff.

**COUNT I – Action in Mandamus Pursuant to 28 USC 1361 Against the Federal Bureau of Prisons**

71. Plaintiff incorporates by reference all preceding paragraphs.

72. The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

73. The Federal Bureau of Prisons maintains a duty to provide medical care to persons in its custody.

74. Each month that the Federal Bureau of Prisons fails to provide treatment, additional permanent deterioration of the nerves in Plaintiff's hands occurs.

75. The Federal Bureau of Prisons, through its agents, have taken a deliberate indifference to the situation.

76. An Order compelling the Federal Bureau of Prisons to provide medical treatment appears necessary.

WHEREFORE, Plaintiff Stephen Saccoccia respectfully requests that this Court enter an Order directing the Federal Bureau of Prisons providing the necessary treatment and surgery. Costs, and any attorney fees.

**COUNT II – Administrative Procedures Act Violations Against the Federal Bureau of Prisons, United States Department of Justice**

77. Plaintiff incorporates by reference all preceding paragraphs.

78. The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review." 5 U.S.C. § 702.

79. "Agency action," for purposes of the APA includes "an agency's failure to act." 5 U.S.C. § 551(13).

80. The APA empowers the Court to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

81. The APA empowers this Court to set aside a final agency action where, as here, the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or which violates a constitutional right.

82. Sometime in late 2025, through administrative remedy1233063-A2, the Federal Bureau of Prisons issued a final agency action denying Plaintiff prompt and complete medical care.

83. Plaintiff was adversely affected and aggrieved by the final agency action and is at serious risk of further physical injury.

84. Plaintiff is entitled to have the final agency actions set aside because it was "arbitrary, capricious, an abuse of discretion and/or otherwise not in accordance with law."

85. Plaintiff is entitled to declare, pursuant to 5 U.S.C. § 706(2) that the actions of the agency constitute a deliberate indifference and violate Plaintiff's constitutional right to be free from cruel and unusual punishment, and that the Court create a remedy.

WHEREFORE, Plaintiff, pursuant to 5 U.S.C. § 706(1), respectfully demands that this Court compel agency action unlawfully withheld or unreasonably delayed, specifically the necessary medical treatment to prevent further damage to the Plaintiff, or to declare that the denial of the final agency action denying intervention to assure prompt medical care or to expedite medical treatment was arbitrary, capricious, an abuse of discretion, or contrary to law pursuant to 5 U.S.C. § 706(2), or creates a constitutional violation.

## COUNT III – Medical malpractice and/or negligence against the United States of America

86. Plaintiff incorporates by reference all preceding paragraphs.

87. The United States, through its agents, maintained a duty through a provider-patient relationship with Plaintiff. The United States had a duty to diagnose, treat and care for Plaintiff, and to provide prompt testing and treatment of medical conditions.

88. The United States, through its agents, breached the medical standard of care and procedures for patients with carpal tunnel including waiting years prior to performing the first testing, waiting too long to schedule the first surgery on the right hand from time it became evident that surgery was necessary or was the best course of conduct, failure to provide prompt follow-up care to determine why the post-surgery condition worsened, failure to provide surgery on the left hand, delayed testing despite recommendations, denial of surgery consultations, and repeated evaluations over an extended period despite knowing the cause of the symptoms and the necessity for additional surgery in the right hand and surgery for the left hand.

89. The delays in providing treatment,and the slow walking of the treatment options, over nearly eight years, with the recommended surgeries still not completed, caused Plaintiff's harm. Had prompt treatment occurred years prior to the first surgery on the right hand, and if surgery was promptly done on the left hand, the present poor condition and inability to fully use Plaintiff's hands, coupled by chronic pain, would not have occurred or would have been much lesser in nature.

90. As a proximate result of the medical malpractice and breach of the medical standard of care, Plaintiff was damaged in that he spent nearly eight years with pain that has become worse, has lost the use of most of his right hand, and the ability to use the left hand has, and continues to, deteriorate due to nerve damage.

91. The amount of damages, due to the worsening of the condition and severe pain, continues to increase as treatment continues to be delayed by the defendants.

WHEREFORE, Plaintiff Stephen Saccoccia respectfully demands that this Court enter judgment in the amount of $2,420,000, subject to amendment as time continues without treatment, interest, along with costs.

Respectfully submitted,

Stephen Saccoccia 02596-070
PO Box 1032
Coleman, FL 33521

PLAINTIFF

**VERIFICATION**

I, Stephen Saccoccia, verify under the penalty for perjury that the foregoing allegations in the above Complaint are true and correct to the best of my knowledge, information and belief (28 USC 1746).

Respectfully submitted,

Stephen Saccoccia 02596-070
PO Box 1032
Coleman, FL 33521

**DECLARATION OF FILING**

I, Stephen Saccoccia, declare under the penalty for perjury that I filed the foregoing Complaint by placing it in the institutional mailbox for delivery to the court, postage prepaid, on September 6, 2026, addressed to the Clerk of the United States District Court, 207 Northwest Second Street Ocala, Florida 34475. *Houston v. Lack.* 487 US 266 (1988).

Stephen Saccoccia 02596-070
PO Box 1032
Coleman, FL 33521

Stephen Saccoccia
02596070
PO Box 1032
Coleman, FL 33521




SCREENED
By USMS

Clerk
US District Court
207 Northwest Second St
Ocala, FL 34475