FILED - USDC - FLMD - OCA
OCT 13 2026 PM1:03



# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

Eastern Division

Case No. 5:26-cv-00690-JEP-PR

*(to be filled in by the Clerk's Office)*

**JURY TRIAL DEMANDED**

STEPHEN SACCOCCIA

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

UNITED STATES OF AMERICA,
FEDERAL BUREAU OF PRISONS,
UNITED STATES DEPARTMENT
OF JUSTICE,

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

## AMENDED COMPLAINT
(Prisoner Complaint)

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | STEPHEN SACCOCCIA |
| All other names by which you have been known: | |
| ID Number | 02596-070 |
| Current Institution | FCI COLEMAN |
| Address | PO BOX 1032 |
| | COLEMAN (*City*) FL (*State*) 33521 (*Zip Code*) |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | United States of America |
| Address | c/o U.S. Department of Justice |
| | Washington (*City*) DC (*State*) 20530-0001 (*Zip Code*) |

☐ Individual capacity ☐ Official capacity (X) Sued pursuant to the Federal Tort Claims Act for the negligence and medical malpractice

Defendant No. 2

| | |
|---|---|
| Name | United States Department of Justice, Federal Bureau of Prisons |
| Address | 320 First Street N.W. |
| | Washington (*City*) DC (*State*) 20534 (*Zip Code*) |

☐ Individual capacity ☐ Official capacity (X) Sued for mandamus and under the Administrative Procedures Act.

## II. Basis for Jurisdiction

This Court maintains jurisdiction pursuant to 5 U.S.C.§§701, *et seq.,* and 28 U.S.C. §§ 1346(b), 1361, and 2671-2680. Specifically, this is a case brought under the Federal Tort Claims Act, for mandamus against a federal agency, and for review under the Administrative Procedures Act.

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against *(check all that apply)*:

(X) None of the type of defendants listed on the form. This suit is against the United States of America pursuant to the Federal Tort Claims Act and the United States Department of Justice, Federal Bureau of Prisons, for mandamus and pursuant to the Administrative Procedures Act.

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

X Convicted and sentenced federal prisoner

## IV. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.

See below.

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.

See below.

C. What date and approximate time did the events giving rise to your claim(s) occur?

See below.

D. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

1. As stated so simply by Benjamin L Torrez, DO, MPH, FAAOS in his article, *When Is It Time to Consider Carpal Tunnel Surgery?*

   Carpal tunnel syndrome occurs when the median nerve is compressed in the wrist, causing numbness, tingling, and weakness. Conservative treatments like splinting, anti-inflammatory medications, and activity modification are usually tried *first*. Surgery becomes the right option when symptoms persist, worsen, or interfere with daily life despite non-surgical care. ***Delaying surgery for severe cases can lead to permanent nerve damage and lasting weakness***.[1]

2. From 2018 through 2020, Plaintiff continually advised the Health Services department of the Federal Bureau of Prisons of problems and pain and swelling in his hands, but no action was taken.
3. During 2020 and 2021, the pain in both hands progressively worsened.
4. Multiple visits to the institution's medical clinic occurred in addition to written requests for treatment during 2020, 2021, and 2022.
5. On August 1, 2022, Dr. Richard Li made an initial diagnosis of carpal tunnel and prescribed wrist braces along with 5% lidocaine ointment and meloxicam for pain.
6. After continuing complaints and multiple years since the first complaints, Dr. Li finally chose to order testing.
7. On February 28, 2023, an EMG test performed by Galina Bogorodskaya, M.D., found evidence of *severe* bilateral carpal tunnel syndrome.
8. After nearly a month, on March 22, 2023, Dr. Li requested hand surgery consultation with a target date of April 14, 2023.

[1] https://www.torrezorthopedics.com/blog/when-is-it-time-to-consider-carpal-tunnel-surgery

9. Over two and a half months later on June 29, 2023, hand surgeon Clayton Hann, M.D., of the SIMEDHealth Hand Surgery, 929 US-441, Ste 401, Lady Lake, Fl 32159, concurred with the neurologist, declared the right hand extremely bad, and advised that surgery should occur within 30 to 60 days to avoid damage and complications.

10. Health Services staff ignored these recommendations of their own consultant with respect to the urgent need.

11. On January 3, 2024, Plaintiff appeared at sick call for extreme pain. Donald Jamieson ARNP discovered that no request for surgery was ever forwarded to the regional director for approval. ARNP Jamieson submitted the request for expedited surgery based on Dr. Hann and Dr. Bogorodskaya, and he prescribed prednisone.

12. The target date was April 3, 2024, notwithstanding that the surgery should have already occurred.

13. Over one year after the defendants' agents knew of the urgent need for surgery, they finally arranged for it on August 1, 2024, and it was completed on the right hand only.

14. After surgery, Dr. Hann prescribed Hydrocodone/APAP tablets 5/325 mg. 4 times per day for 3 days.

15. Dr. Li ignored the need for pain relief and, without consultation of the surgeon, changed the prescription to mere Ibuprofen.

16. From August 1, 2024, to August 15, 2024, Plaintiff was in extreme pain but medical staff refused to see him or take any action.

17. The pain was excruciating, a level 10 of 10.

18. On August 15, 2024, Plaintiff saw Dr. Hann and told him that Dr. Li unilaterally changed the medication to Ibuprofen.

19. Dr. Hann provided Plaintiff a shot for pain.

20. Plaintiff advised Dr. Hann that he was concerned about the next surgery because he could not go through the excruciating pain of not being provided aftercare or any form of post-surgical pain relief other than over the counter medication meant for minor aches. Dr. Hann convinced Plaintiff that the other surgery needed to occur as soon as possible.

21. The Health Services Department set a target date of November 15, 2024, for the next surgery.

22. In the interim, the pain in the hand that was operated on grew significantly worse and Plaintiff suffered swelling and other complications, possibly an infection.

23. Plaintiff sought treatment verbally and in writing repeatedly from August 15, 2024, to October 28, 2024.

24. The Plaintiff filed a request for an informal resolution which was ignored.

25. On October 28, 2024, Plaintiff saw ARNP Jamieson.

26. Plaintiff requested that he see the surgeon forthwith in November 2024.

27. ARNP Jamieson advised that the hand looked extremely bad, was retaining fluid, and he opined Plaintiff may need additional surgery to correct the situation.

28. ARNP Jamieson prescribed Gagapitine 100mg (a low dose) to see how Plaintiff reacted.

29. However, Jamieson's request was denied.

30. In the first week of December 2024, Unit Manager Moore witnessed the extreme condition of the hand and contacted Health Services and directed they address the right hand being clearly swollen and untreated.

31. On December 2, 2024, Jose Ruiz-Quinones, MD, saw Plaintiff and recommended "hand surgery evaluation."

32. Health Services prescribed some methylprednisolone for the pain.

33. Plaintiff continuously appeared for "sick call" reporting pain and suffering and the need for follow up and additional surgery.

34. As of April 2025, the Bureau of Prisons still did not perform the necessary follow up despite repeated requests, appearances at sick call, and inmate requests to staff member form being submitted.

35. On April 17, 2025, Plaintiff enlisted Jonathan Platt, Esq., as his agent, who notified the Health Services Department that Plaintiff lost most of the use of his right hand as a result of the ultimately treatment and that the left hand deteriorated to the point that it was more problematic than the right hand.

36. Attorney Platt notified the Federal Bureau of Prisons that Plaintiff experiences constant extreme pain in both hands and that this has created a severe disability and hardship.

37. Attorney Platt requested that the Federal Bureau of Prisons expedite Plaintiff's evaluation and follow up to limit and correct the damage in both of his hands.

38. Attorney Platt notified the Bureau of Prisons that further delay may result in permanent and irreversible damage.

39. Plaintiff continued to frequently attend "sick call" and made requests to the Federal Bureau of Prisons for treatment.

40. On May 27, 2025, Attorney Platt notified the Bureau of Prisons that Plaintiff's condition has worsened and he is now experiencing severe, debilitating pain.

41. Attorney Platt advised the Bureau of Prisons that Plaintiff was compelled to spend a significant portion of each day with his hands submerged in ice and that he had to resort to placing Lidocaine patches directly on the affected areas.

42. Attorney Platt strongly urged the Federal Bureau of Prisons to immediately comply with the treatment recommendations of their own medical consultants to ensure that Plaintiff receives all necessary follow-up care without further delay.

43. During the end of May 2025, the Bureau of prisons had Plaintiff evaluated by Jongmin Kim, M.D.

44. Dr. Kim conducted an extensive examination of both of Plaintiff's hands including x-rays.

45. Dr. Kim ordered expedited neurological testing.

46. Dr. Kim expressed concerns to Plaintiff that the delay in post-surgical care since the August 1, 2024, operation exacerbated the damage and that surgery appeared required to save the use of the hands.

47. Dr. Kim also expressed to the Plaintiff that evidence exists of muscle damage caused by the delayed treatment.

48. On an unknown date, Dr. Li made a request for hand surgery for Plaintiff with a target date of December 19, 2025 and a scheduled target date of April 17, 2025, for "hand surgery, offsite eval. Please follow-up AIC with history of right-hand carpal tunnel surgery in Aug 2024, **currently with worsening right hand** 1st, 2nd, and 3rh finer paresthesia."

49. On June 6, 2025, Attorney Platt contacted the Bureau of Prisons again asking for the recommended treatment to be followed up on, that surgery be scheduled, and that the neurological testing occur as ordered.

50. In addition, Attorney Platt advised that Plaintiff made requests for his medical records and that they should be provided.

---

51. On September 28, 2025, RN Diamerys Navarro met with the Plaintiff. At 14:47 she noted that she was follow-up with *well path*[2] on the status of pending schedule hand surgery consult. *Well path* reports consult has been scheduled.

52. However, at 15:52 on the same date, she noted that she was following up with "*well path* on the status of pending schedule hand surgery consult. *Well path* reports consult has been completed on 5/23/2025. Orthopedic consult order with a target date of 9/25/2025 was **disapproved** due to ordered as surgery consult and it should be for EMG with follow-up with Dr. Kim at UF Gainsville for carpal tunnel syndrome after EMG." She noted an orthopedist consult with a target date of November 18, 2025, and set the priority to "routine." She stated that the reason for an "EMG Study Order" was due to "bilateral carpal tunnel syndrome and CMCJ arthritis with subluxation. Study recommended to evaluate nerve compression."

---

[2] Based on information, "well path" refers to Wellpath Care, a Tennessee company that contracts with the defendants. "Wellpath works with partners to coordinate healthcare delivery through joint monitoring, planning, and problem resolution. We communicate on contract matters, including our services and operations, day-to-day activities, program needs, and future planning. We also provide resources for discharge planning and continuity of care. Here are a few examples of our administrative services: Medical billing and coding, Insurance verification and pre-authorization, Appointment scheduling and reminders, Patient intake and registration, Medical transcription, Revenue cycle management, Discharge planning and continuity of care."

53. On October 8, 2025, ARNP Venetia Etkins evaluated Plaintiff and noted his bilateral carpal tunnel syndrome. She noted that an EMG was "pending." She noted that Plaintiff advised the pain in his hands was getting worse, making it difficult to grasp things, button his shirt, and perform other private hygiene activities. She noted a pain assessment of "7" with shooting pain and her "intervention" was the recommended EMG.

54. Starting in November 2024, Plaintiff attempted to gain medical treatment through the administrative remedy procedure, including Case 1238063, but the Bureau of Prisons denied any form of relief and has not expedited treatment. Instead, they claim they are providing treatment.

55. On November 17, 2025, the Federal Bureau of Prisons provided Plaintiff with a video consultation with Leslie Carroll, FNP-C, of Neura Health On-Demand Neurology, P.A. Nurse Practitioner Carroll noted, "Stephen's symptoms are most consistent with carpal tunnel bilaterally, r/ hand has had surgery now w/ worsening numbness." She recommended that they conduct an "EMG/NCS ASAP" and that Plaintiff "see hand surgeon."

56. On January 20, 2026, the Bureau of Prisons transported Plaintiff to the SHANDS at the University of Florida where he was seen by Matthew Lamagna, D.O. Dr. Lamaga diagnosed Plaintiff with bilateral carpal tunnel syndrome. This was the EMG test that the defendants purportedly needed to proceed with surgery.

57. In July 2026, Attorney Platt again sent a letter to the Federal Bureau of Prisons seeking action for Plaintiff's medical conditions.

58. Plaintiff has repeatedly and consistently attended the Health Services Department, or advised at medical rounds during the repeated lockdowns at the Coleman Correctional Complex, to report worsening conditions.

59. However, as of September 1, 2026, allowing nearly nine months to pass from the EMG test, Plaintiff still has not received the necessary treatment or surgery to reduce or stop the nerve damage from carpal tunnel.

60. The actions of the agents of the Federal Bureau of Prisons, United States Department of Justice, constitute a deliberate indifference to the serious medical needs of the Plaintiff.

**COUNT I – Action in Mandamus Pursuant to 28 USC 1361 Against the Federal Bureau of Prisons**

61. Plaintiff incorporates by reference all preceding paragraphs.

62. The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

63. The Federal Bureau of Prisons maintains a duty to provide medical care to persons in its custody.

64. Each month that the Federal Bureau of Prisons fails to provide treatment, additional permanent deterioration of the nerves in Plaintiff's hands occurs.

65. The Federal Bureau of Prisons, through its agents, have taken a deliberate indifference to the situation.

66. An Order compelling the Federal Bureau of Prisons to provide medical treatment appears necessary.

WHEREFORE, Plaintiff Stephen Saccoccia respectfully requests that this Court enter an Order directing the Federal Bureau of Prisons providing the necessary treatment and surgery. Costs, and any attorney fees.

**COUNT II – Administrative Procedures Act Violations Against the Federal Bureau of Prisons, United States Department of Justice**

67. Plaintiff incorporates by reference all preceding paragraphs.

68. The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review." 5 U.S.C. § 702.

69. "Agency action," for purposes of the APA includes "an agency's failure to act." 5 U.S.C. § 551(13).

70. The APA empowers the Court to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

71. The APA empowers this Court to set aside a final agency action where, as here, the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or which violates a constitutional right.

72. Sometime in late 2025, through administrative remedy1233063-A2, the Federal Bureau of Prisons issued a final agency action denying Plaintiff prompt and complete medical care.

73. Plaintiff was adversely affected and aggrieved by the final agency action and is at serious risk of further physical injury.

74. Plaintiff is entitled to have the final agency actions set aside because it was "arbitrary, capricious, an abuse of discretion and/or otherwise not in accordance with law."

75. Plaintiff is entitled to declare, pursuant to 5 U.S.C. § 706(2) that the actions of the agency constitute a deliberate indifference and violate Plaintiff's constitutional right to be free from cruel and unusual punishment, and that the Court create a remedy.

WHEREFORE, Plaintiff, pursuant to 5 U.S.C. § 706(1), respectfully demands that this Court compel agency action unlawfully withheld or unreasonably delayed, specifically the necessary medical treatment to prevent further damage to the Plaintiff, or to declare that the denial of the final agency action denying intervention to assure prompt medical care or to expedite medical treatment was arbitrary, capricious, an abuse of discretion, or contrary to law pursuant to 5 U.S.C. § 706(2), or creates a constitutional violation.

**COUNT III – Medical malpractice and/or negligence against the United States of America**

76. Plaintiff incorporates by reference all preceding paragraphs.

77. The United States, through its agents, maintained a duty through a provider-patient relationship with Plaintiff. The United States had a duty to diagnose, treat and care for Plaintiff, and to provide prompt testing and treatment of medical conditions.

78. The United States, through its agents, breached the medical standard of care and procedures for patients with carpal tunnel including waiting years prior to performing the first testing, waiting too long to schedule the first surgery on the right hand from time it became evident that surgery was necessary or was the best course of conduct, failure to provide prompt follow-up care to determine why the post-surgery condition worsened, failure to provide surgery on the left hand, delayed testing despite recommendations, denial of surgery consultations, and repeated evaluations over an extended period despite knowing the cause of the symptoms and the necessity for additional surgery in the right hand and surgery for the left hand.

79. The delays in providing treatment,and the slow walking of the treatment options, over nearly eight years, with the recommended surgeries still not completed, caused Plaintiff's harm. Had prompt treatment occurred years prior to the first surgery on the right hand, and if surgery was promptly done on the left hand, the present poor condition and inability to fully use Plaintiff's hands, coupled by chronic pain, would not have occurred or would have been much lesser in nature.

80. As a proximate result of the medical malpractice and breach of the medical standard of care, Plaintiff was damaged in that he spent nearly eight years with pain that has become worse, has lost the use of most of his right hand, and the ability to use the left hand has, and continues to, deteriorate due to nerve damage.

81. The amount of damages, due to the worsening of the condition and severe pain, continues to increase as treatment continues to be delayed by the defendants.

WHEREFORE, Plaintiff Stephen Saccoccia respectfully demands that this Court enter judgment in the amount of $2,420,000, subject to amendment as time continues without treatment, interest, along with costs.

## V. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

82. As explained above, as a result of years of slow-walking treatment for Plaintiff's carpal tunnel, and not following up on surgery and surgery recommendations, he experienced nerve damage in both hands, which continues to degrade. Plaintiff's hands are practically unusable, and will become unusable, due to the nerve degeneration which occurred solely as a result of the failure to provide prompt and consistent treatment.

## VI. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

83. As explained in the wherefore clauses as to each count listed above, Plaintiff demands a jury trial on the tort claims for monetary damages in an amount to be proven at trial, or $2,420,000, attorney fees if counsel is retained, a writ of mandamus against the Federal Bureau of Prisons, appropriate relief under the Administrative Procedures Act, and leave to amend as more information and discovery is obtained.

## VII. Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A. Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☐ (X) Yes

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Federal Correctional Complex Coleman including United States Penitentiary I and Coleman Federal Correctional Institution.

B. Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☐ (X) Yes.

C. Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ (X) Yes.

If yes, which claim(s)?

All of the claims.

---

D. Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☐ (X) Yes

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ (X) Yes

E. If you did file a grievance:

1. Where did you file the grievance?

84. Plaintiff filed the so-called administrative remedies by seeking informal resolution, appealing to the Warden, Regional Director, and Central Office.

85. Plaintiff filed an administrative tort claim with the Regional Director of the Federal Bureau of Prisons.

---

2. What did you claim in your grievance?

86. That the Federal Bureau of Prisons' failure to consistently treat Plaintiff's carpal tunnel syndrome caused, and continues to cause, damage to Plaintiff's hands which has cause close to a total loss of use of the hands and will eventually cause a total disability.

3. What was the result, if any?

The administrative remedies and tort claims were denied.

4. What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

All available appeals were exhausted.

G. Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

87. To be clear, Plaintiff lodged an administrative tort claim alleging negligence and medical malpractice on TRT-SER-2025-00801, which was ultimately denied. Plaintiff requested reconsideration of the denial of TRT-SER-2026-00801 and amended it to include subsequent events and the failure to provide treatment. By letter mailed on March 9, 2026 at 1:46 p.m. via certified mail, the United States converted the reconsideration and amendment to tort claim number TRT-SER-2026-00016 and denied the same.

88. In addition, Plaintiff exhausted Federal Bureau of Prisons administrative remedies relating to the delayed medical treatment and the damage as a proximate result by filing a so-called "BP-9" with the Warden, appealing it to the Regional Director, and lodging a final appeal to the Federal Bureau of Prisons Central Office. Plaintiff filed his final administrative remedy on August 7, 2025, the Administrative Remedy case number assigned by the defendants was 1233063. This agency denial occurred in late 2025 and is final. 5 U.S.C. §§ 551(13); 701(b)(2); 704. Plaintiff has no further administrative remedies to exhaust.

---

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☐ (X) No

A. Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ (X) No

________________________________________

C. Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ (X) No

If no, give the approximate date of disposition ____________________

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

________________________________________

## IX. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: October 1, 2026

Signature of Plaintiff

Printed Name of Plaintiff: STEPHEN SACCOCCIA

Prison Identification #: 02596-070

Prison Address: PO BOX 1032

COLEMAN (*City*) FL (*State*) 33521 (*Zip Code*)

**VERIFICATION**

I, Stephen Saccoccia, verify under the penalty for perjury that the foregoing allegations in the above Complaint are true and correct to the best of my knowledge, information and belief (28 USC 1746).

Respectfully submitted,

Stephen A. Saccoccia

Stephen Saccoccia 02596-070
PO Box 1032
Coleman, FL 33521

Stephen Saccoccia
02596070
PO Box 1032
Coleman, FL 33521




Clerk
US District Court
207 Northwest Second Street
Ocala, FL 34475

SCREENED
By USMS